## FEDERAL LIFE INS. CO. v. RASCOE.

(Circuit Court of Appeals, Sixth Circuit. May 17, 1926. Rehearing Denied June 19, 1926.)

No. 4455.

1. **Courts &#8576;406(1)—Circuit Court of Appeals cannot accept trial court's opinion nor motion for new trial as separate findings of facts, and in absence of such findings neither evidence nor question of law are reviewable.**

Neither the opinion of trial court nor motion for new trial can be accepted as separate findings of facts by Circuit Court of Appeals, and in absence of such findings, neither evidence nor question of law presented by it are reviewable.

2. **Courts &#8576;406(1).**

Circuit Court of Appeals has no authority to consider and determine weight of evidence.

3. **Continuance &#8576;22—Where no evidence was introduced until two days after order was entered transferring cause from equity to law, court did not abuse its discretion in denying defendant's motion for continuance to procure its officers as witnesses.**

Where no evidence was introduced until two days after order was entered transferring cause from equity to law, and hearing was not concluded until day thereafter, court did not abuse its discretion in denying defendant's motion for continuance for a week or more, on theory that transfer of cause and amendment of complaint required testimony of defendant's officers, who were then in Chicago; presumption being, in absence of contrary proof, that delay would be for convenience only, and not because of necessity.

4. **Continuance &#8576;30—Permitting amendment of complaint in action on accident policy, so as to allege breach of contract, held not to raise new issues, and denial of defendant's motion for continuance was not abuse of discretion.**

Where action on accident insurance policy was based on company's refusal to comply with terms of policy, and complainant prayed in alternative for recovery of sum she would be entitled to receive for total disability for life, and defendant's answer denied all liablity, permitting amendment of complaint, so as to allege breach of contract, did not present wholly new issue, and trial court did not abuse its discretion in denying defendant's motion for continuance.

5. **Insurance &#8576;666—Where accident policy provided for specified weekly payments to insured so long as she was disabled from accidental injury and required insured to furnish physician's report of her condition every 30 days, on insurer's refusal to continue further payments, insured was entitled to sue for breach of entire contract.**

Where accident policy provided that insurer would pay insured specified sum weekly so long as she was totally disabled from accidental injuries, and required her, in such event, to furnish physician's report every 30 days, stating her condition and probable duration of disability, contract was a single contract, and on insurer's refusal to make further payments insured was entitled to sue for breach of entire contract.

6. Action ⊝⟞53(3)—On insurer's repudiation of liability under accident policy requiring weekly payments to insured for total disability, public policy required insured to maintain but one action for entire damages resulting from breach.

Where insurer repudiated liability on accident policy, requiring it to make weekly payments so long as insured was totally disabled, in order to avoid, multiplicity of suits, public policy required that insured maintain but one action for entire damages resulting from breach.

Denison, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Middle District of Tennessee; John J. Gore, Judge.

Action by Jennie M. Rascoe against the Federal Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Mrs. Jennie M. Rascoe brought an action in the chancery court at Nashville, Tenn., against the Federal Life Insurance Company to recover on a policy of insurance by the terms of which the insurance company agreed to pay her the sum of $25 per week so long as she suffers total disability from accidental injuries sustained while a passenger in or on a public conveyance provided by a common carrier for passenger service. It was further averred that, by reason of injuries sustained by the plaintiff while a passenger on a train of the Louisville & Nashville Railroad Company, a common carrier for passengers, she was wholly and continuously disabled from performing any and every kind of duty pertaining to her occupation; that proofs were made in accordance with the terms of the policy, and that after some delay and investigation the defendant made several payments to the plaintiff, aggregating $840.37, including the sum allowed for hospital expenses, and covering the payments due from the date of the accident, May 16, 1922, to January 2, 1923; and that ever since that time the defendant has wholly failed, refused, and neglected to make any further payments to plaintiff, although she has during all of this time been wholly disabled from performing any and every kind of duty pertaining to her occupation, and will be so disabled for and during the balance of her natural life.

Upon application of defendant, this cause was removed to the United States District Court, in which court the defendant filed an answer, admitting the contract, proofs of loss, and payments made by it to the plaintiff, and that it had refused to make further payments, and denied that it was indebted to the complainant, or liable in any amount whatever, she having received all payments to which she is entitled under the terms of her policy. On February 9, 1925, the court, on motion of the plaintiff, entered an order transferring the case from the equity docket to the law docket, and leave was given to the plaintiff to amend her declaration, by striking out paragraph 15 of the original bill, and inserting in lieu thereof the following: "Complainant charges that defendant, Federal Life Insurance Company, has deliberately breached, rejected, repudiated, and abandoned its said contract of insurance with complainant, and that it has done so after recognizing the validity and binding force of said contract, and without just cause." A similar averment was added to paragraphs 1, 2, and 3, and the prayer was amended by striking out sections 2, 3, and 4, and substituting in lieu thereof a prayer for damages for breach of contract in the sum of $25,000, to which order, transferring the cause to the law docket of the court and permitting the plaintiff to amend, the defendant excepted. Leave was also granted to the defendant to amend its answer, by denying the allegations in plaintiff's amendment to her original bill and her right to recover damages for breach of contract.

This order allowing the defendants to amend was made and entered on February 10, 1925, and upon the same date the defendant filed a motion for continuance upon the theory that the transfer to the law docket and the amendment of plaintiff's original declaration was such a change in the nature of the action as to require a new line of defense, that could not be prepared and arranged without further study and investigation, and especially without the presence and testimony of one or more of the officials of the company, who were then in Chicago, Ill., and whose presence at the trial could not be obtained within a week or more. This motion was overruled and exceptions noted. On February 10, 1925, defendant filed a demurrer to the amended declaration, which demurrer was overruled, to which ruling defendant excepted. On February 10th the parties waived in writing a trial by jury, and on February 11th an order was entered placing the cause on trial. Trial was had and the taking of testimony concluded on February 12th. Upon the issues joined the court found in favor of plaintiff. Motions for new trial and in arrest of judgment were filed and overruled, and a judgment was entered for the plaintiff against the defendant in the sum of $21,518.98.

On June 12, 1925, the court ordered that the finding of facts made by the judge on the trial of this case should be filed and made a part of the bill of exceptions, but no such finding of facts was made or filed. After the court had announced its conclusion, and ordered a judgment to be entered in favor of the plaintiff, counsel for defendant asked permission to submit to the court some ultimate facts based on its finding, to which the court replied: "Yes, I will be glad to do so. You can do that in a motion for new trial, or in any way you want to get it in." In paragraphs 10, 11, 12, 13, 14, and 17 of the motion for new trial, complaint is made that the court erred in finding facts as therein stated.

Thos. J. Tyne, of Nashville, Tenn. (J. M. Peebles and Thos. J. Tyne, Jr., both of Nashville, Tenn., C. A. Atkinson, of Chicago, Ill., and Jas. C. Jones, of St. Louis, Mo., on the brief), for plaintiff in error.

W. H. Washington and Edwin A. Price, both of Nashville, Tenn. (Thos. W. Schlater, Jr., of Nashville, Tenn., on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] Neither the opinion of the court nor the motion for new trial can be accepted as a separate finding of facts. Law v. U. S., 266 U. S. 494, 496, 45 S. Ct. 175, 69 L. Ed. 401; U. S. v. Gordin and U. S. v. Gordin, Adm'r, 9 F(2d) 394, decided by this court December 1, 1925.

[2] Without such separate findings of facts, neither the evidence nor the question of law presented by it is reviewable by this court. If, however, the facts stated in the opinion and in the motion for a new trial were accepted as a finding of facts made by the court, to which exceptions were taken by the defendant, the result would not be different. The record discloses that they are all sustained by substantial evidence. This court has no authority to consider and determine the weight of the evidence.

[3] It is also assigned as error that the court abused its discretion in overruling the defendant's motion for a continuance after the transfer of the case to the law docket and the amendment of plaintiff's declaration. This order was entered on the 9th of February. No evidence was introduced until the 11th of February and the hearing of evidence was not concluded until the 12th. This afforded ample opportunity for officers of the company living in Chicago to appear and testify in the case. No reason is stated in the motion for continuance why it would require a week to secure the attendance of officers of the defendant. In the absence of such statement, and proof thereof, the presumption would obtain that the delay would be for their convenience only, and not because of necessity.

[4] Nor was the change in the pleadings of such character as to present a wholly new issue. The plaintiff's action was based upon the failure and refusal of the defendant to comply with the terms of this contract. Plaintiff, in her original bill of complaint, not only prayed for a recovery of payments then due, but also prayed in the alternative for a recovery of the total sum she would be entitled to receive by reason of her total disability for life. It is true that the original action contemplated recovery upon the contract, and not for damages for its breach; yet the defendant in its answer denied all liability and averred that the plaintiff had received all she was entitled to receive under the terms of the contract. Therefore the original pleadings presented substantially the same issues of fact as presented by the amendments thereto. For the reasons stated, we do not think the court abused its discretion in refusing a continuance, nor has it been made to appear, by affidavit or otherwise, that the defendant has been prejudiced thereby.

[5] It is further claimed that the court erred in overruling the demurrer to the amended declaration. In support of this assignment of error it is insisted that the amended declaration fails to state a cause of action, because there can be no anticipatory breach of a unilateral contract for the payment of money at some future date. As an abstract proposition that may be true, but this is not a unilateral contract for the unconditional payment of money, such as a bond or a promissory note. While the plaintiff in this case has fully discharged her obligation to pay the premiums coming due prior to her injuries, and has continued to pay the premiums until the insurance company declined to accept further payments, nevertheless it is averred in the bill of complaint that by the express terms of this contract she is still required to furnish, and has furnished, regularly to the insurance company, every 30 days, or as near thereto as may be reasonably possible, a report in writing from her attending physician or surgeon, fully stating the condition of the assured and the probable duration of her disability.

This contract therefore, is not an unconditional promise to pay a sum certain in installment, or in gross, where plaintiff has fully performed. On the contrary, she is required every 30 days to submit her person to the examination of a physician and pay the physician for making such examination and for preparing a report in writing to be forwarded to the company. These are the means and methods of proof of continuing disability stipulated in the contract to be furnished by the assured after first proofs of injury and resulting disability have been made and accepted by the insurance company, and, in the absence of fraud or collusion, this provision is binding alike on the company and the assured.

It is not merely a technical requirement, but a substantial and continuing burden, involving the expenditure of time and money on the part of the assured. It is said, however, that this is merely a condition precedent to the payment of these installments, and not a condition that could be enforced by the company. The latter may be true, so far as enforcement by action is concerned; nevertheless it is a provision binding on the plaintiff, the performance of which may be enforced by refusal to pay. In this respect it does not differ from a tender of property under a sales contract, or the tender of service under an employment contract (Hochstetter v. De la Tour, 2 El. & Bl. 678), or the delivery of notes as in Equitable Trust Company v. Railroad Company (D. C.) 244 F. 485, in which case this question is fully discussed in the opinion on pages 501, 502, and 504. See, also, Central Trust Co v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580; Lovell v. Ins. Co., 111 U. S. 264, 274, 4 S. Ct. 390, 28 L. Ed. 423; Parker v. Russell, 133 Mass. 74; Mutual Reserve Fund Life Ass'n v. Ferrenbach, 144 F. 342, 75 C. C. A. 304, 7 L. R. A. (N. S.) 1163; Railroad Co. v. Staub, 75 Tenn. (7 Lea) 397, cited with approval in Pierce v. Tenn. Coal Co., 173 U. S. 1, 14, 19 S. Ct. 335, 43 L. Ed. 591; Roehm v. Horst, 178 U. S. 1, 8, 20 S. Ct. 780, 44 L. Ed. 953, citing with approval Hochstetter v. De la Tour, supra.

In Roehm v. Horst, supra, it is said by Fuller, Chief Justice, in the opinion on page 8 (20 S. Ct. 783): "If a contract provides for a series of acts, and actual default is made in the performance of one of them, accompanied by a refusal to perform the rest, the other party need not perform, but may treat the refusal as a breach of the entire contract, and recover accordingly."

In this case the plaintiff does not rely upon an anticipatory breach, nor upon mere delay, neglect, or default to pay the several installments due under the terms of this contract, but upon an actual breach, after full proofs of continuing disability had been made in the manner and form specifically provided in the policy, coupled with an actual repudiation of the entire contract. A jury was waived, and the trial court found on the issues joined for the plaintiff. Tri-Bullion Smelting Co. v. Jacobsen, 233 F. 646, 147 C. C. A. 454. There are no separate findings of fact, and this court has no authority to review the evidence or questions of law presented by it. Law v. U. S., supra. But, even if this court could accept the opinion of the trial court, in connection with the motion for a new trial, as a separate finding of fact, it appears therefrom that the court specifically found that defendant was acting in bad faith; that it was guilty of an actual breach and an unequivocal repudiation of the entire contract.

[6] This is a single contract. The fact that defendant is required to perform in part at stated intervals does not change its unitary character into a multiplicity of contracts, each relating to but one installment. If there has been an actual breach, coupled with repudiation, of this one contract, then, to avoid a multiplicity of suits, public policy requires that plaintiff may maintain but one action for the entire damages occasioned by such breach. Pierce v. Tennessee Coal Co., supra; Railroad Co. v. Staub; Roehm v. Horst, supra; Williston on Contracts, § 1317; United Press Ass'n v. National Newspaper Ass'n, 237 F. 547, 555, 150 C. C. A. 429; Ætna Life Ins. Co. v. Phifer, 160 Ark. 98, 105, 254 S. W. 335; Pakas v. Hollingshead, 184 N. Y. 211, 77 N. E. 40, 3 L. R. A. (N. S.) 1042, 112 Am. St. Rep. 601, 6 Ann. Cas. 60; Milburn v. Insurance Co., 209 Mo. App. 228, 237, 234 S. W. 378.

The policy provides for the payment of weekly indemnity during disability. It is the claim of the plaintiff that she is permanently disabled. If she can sustain this claim by proofs, then, it appearing that she is in good health, except for the result of her injuries, which are not at all likely to shorten her expectancy, there can be no substantial difficulty, since the adoption of life tables in the ascertainment of her damages. Parker v. Russell, supra. If, on the other hand, it

should appear from the proofs that she is not permanently disabled, then her damages can be readily ascertained for such length of time as the evidence discloses will be necessary to effect a cure.

In view of the conclusion reached, it is unnecessary to consider or discuss the claims of counsel for defendant in error that this contract was made in Tennessee, to be performed in Tennessee, and must therefore be construed by the law of that state.

Affirmed.

DENISON, Circuit Judge. I find myself unable to concur. If the amended declaration is freed from conclusions and confined to fact allegations, the demurrer sufficiently presented the question whether there could be a judgment for the present value of an annuity to the plaintiff, continuing so long as she "lives and suffers."

The parties made a contract by which, in the event of the plaintiff's injury, defendant was to perform at future periods. The judgment, upon the theory of anticipatory breach, has transformed it into a contract for present performance. Unless there is clear and satisfactory reason, according to settled legal principles, the defendant should not be held liable for not doing something which it never agreed to do, and this is as true in regard to time of performance as to other particulars. A plaintiff, who wants now a payment which he agreed to wait for until next year, should show a clear right, not a doubtful one.

Roehm v. Horst is the leading case in the United States. It declares that, where a contract is executory on both sides and is repudiated by one party, the other may presently have his damages assessed as for an anticipatory breach; but it excepts from that rule cases where the contract on the plaintiff's part is not executory. The exception cannot be interpreted and applied without understanding the reason for it, and search for the reason for the exception must take us to the reason for the rule. This is not satisfactorily developed, as I think, in any judicial or text-book discussion which I have seen. The suggestion that there is an implied contract to keep the express contract in force, and that damages of this character are really assessed for breach of this implied contract, seems to me to be going a long way for an answer.[1] To my mind the most forcible reason for the rule of anticipatory damages is this:

In the ordinary case of mutually dependent executory contracts, the plaintiff may say to defendant: "True, I have no right to claim damages now for your nonperformance of what you agreed to do next year; but the meritorious reason for my inability is that you are not obliged to perform your part of next year's contract, unless I also perform my part. Now, by your repudiation, you have put it out of my power further to perform, and hence you cannot be permitted to say that you have not received or will not receive that consideration for your future act, and there is no good reason why you should not pay now (less discount) the damages which would accrue next year."

If this be the reason for the rule, it explains as well the exception. Where his part of the contract has been executed by the plaintiff, he has nothing to do but to wait, and to do so continues to be in his power. His position will not be prejudicially changed by defendant's repudiation; and hence he will have no estoppel to rely upon to precipitate the defendant's obligation. It follows that, not only by its authority, but upon sound principles, the exception made in Roehm v. Horst should be recognized and applied, and not dissipated by hesitant application.

I do not understand that a contract sued upon is executory, as against a plaintiff, unless it binds him to do something, so that an action may lie against him for specific performance, or for nonperformance.[2] By that definition the contract here sued upon is not executory on the plaintiff's part. She is merely obliged from time to time to furnish evidence, if and when she wishes payment; what she must do is, in kind, like presenting a note for payment at a particular place, although it is more burdensome in degree; after all, it is a condition, not an obligation.

Further, I do not find in the facts such an absolute repudiation of the contract as justifies the application of the anticipatory breach rule. Such a repudiation cannot be found in the final cancellation made by the insurance company; that cancellation was an act in express pursuance of the contract, and not in repudiation of it; it was a termination of future liability, and not at all a repudiation of any accrued and existing obligation. Nor can it be found, as I think, in the

---

[1] See Equitable Co. v. Western Co. (D. C.) 244 F. 485, 501.

[2] Even in Pierce v. Tennessee Co., 173 U. S. 1, 19 S. Ct. 335, 43 L. Ed. 591, the plaintiff was bound to continue to work as much as he could, and in the support-for-life cases there is usually an implied, if not express, promise of much coöperation by the one supported.

refusal to pay. What defendant really did was to deny that there was any breach which had obligated it to pay or which obligated it to pay any more. Defendant never has questioned the entire validity of the contract, or denied its continuing liability to pay anything which, under the contract, it ought to pay. While there are decisions which find the necessary basis in a mere denial or breach, I doubt whether they give due regard to what ought to be the character of a repudiation effective to create an obligation inconsistent with the express terms of the contract.

In my judgment, this case illustrates the evils of laxity in permitting a premature recovery. In such a case as this (as facts often are, though possibly not in this case), plaintiff in a year or two may recover entirely or (if the case is as bad as here claimed) is very likely not to live long. In either case the true liability is for a short term; but the recovery has been upon the basis of the full expectation of life of a healthy person,—though no error in this respect was duly saved.