**Robert O. JAMISON, Plaintiff–Appellant,**

v.

**JAMISON PEST CONTROL COMPANY, Defendant–Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Oct. 13, 1992.

Application for Permission to Appeal Denied by Supreme Court March 1, 1993.

Larry E. Parrish, Memphis, for plaintiff-appellant.

William M. Jeter, and Lucinda S. Murray, Memphis, for defendant-appellee.

CRAWFORD, Judge.

Plaintiff, Robert O. Jamison, sued defendant Jamison Pest Control Company for damages arising from breach of contract. From an adverse judgment in Chancery Court plaintiff appealed to this Court and this Court reversed the judgment of the trial court. We also granted summary judgment to plaintiff in his action for breach of an oral contract dated June 16, 1984. This Court remanded the case to the trial court for a determination of the damages due plaintiff from defendant for the breach of the contract.

On remand, the trial court ruled that the determination of damages was to be made as a matter of law, allowed no proof as to damages, and entered final judgment which states:

> This cause came on to be heard before the Honorable Neal Small, Chancellor of Part I of the Chancery Court of Shelby County, Tennessee on September 26, 1991 and it now appearing to the Court, after a review of the Order of the Tennessee Court of Appeals of June 20, 1991 and upon statement of counsel and the entire record in this cause, that this is a matter in which Summary Judgment has heretofore and subsequently reversed in part and in which the parties have heretofore stated that there are no genuine issues as to any material fact.

> The Court further finds that, pursuant to the Court of Appeals Order of June 20, 1991, this Court is to make a determination of damages due Plaintiff/Counter–Defendant, Robert O. Jamison, for Defendant/Counter–Plaintiff, Jamison Pest Control Company's, breach of the July 16, 1984 contract and it appearing to this Honorable Court that this can be done as a matter of law and that an Order be and is hereby entered setting said damages, whereby Jamison Pest Control Company is ordered to pay the sum of Five Hun-

dred Seventy–Seven and 50/100 ($577.50) Dollars per week, with statutory interest from May 24, 1990 to date and thereafter, to pay the sum of Five Hundred Seventy–Seven and 50/100 ($577.50) Dollars per week for the life of Robert O. Jamison.

It further appearing to this Honorable Court that Jamison Pest Control Company is to pay for the insurance on the vehicle currently owned by Robert O. Jamison as of July 16, 1984 until same is sold. Jamison Pest Control Company further is to continue the group hospitalization and life insurance (within the hospitalization policy) on Robert O. Jamison and that Jamison Pest Control is to continue Robert O. Jamison on the Jamison Pest Control Company's profit-sharing plan. Jamison Pest Control Company is to continue to provide Robert O. Jamison with four Memphis State football tickets and two Memphis State basketball tickets during his lifetime.

The Court further finds that Jamison Pest Control Company must pay to Robert O. Jamison Eight Hundred Seventy–five ($875.00) Dollars per share for his eighty (80) shares of stock in Jamison Pest Control Company and that Robert O. Jamison be and is hereby ordered to tender said shares of stock to Jamison Pest Control Company upon the tender of Seventy Thousand and 00/100 ($70,-000.00) Dollars.

The Court further finds that Robert O. Jamison should continue to honor the covenants as set forth in the original Complaint heretofore filed by him in this Court.

Plaintiff has appealed and the only issue for review is whether the trial court erred in its assessment of damages.

The contract between plaintiff and defendant provided in essence that defendant agreed to do the things required of it in the final judgment and plaintiff agreed not to compete with defendant and to be available for consulting work with defendant. It is uncontroverted that defendant repudiated the contract and refused to make further payments or to perform the other obligations under the contract, and this precipitated the suit by plaintiff. Plaintiff's suit seeks damages for the breach of the contract and does not seek specific performance.

Plaintiff argues that when defendant breached and repudiated the contract, plaintiff was relieved from his obligation and could elect to sue for damages for the breach. He asserts that the trial court would not allow any evidence as to the damages resulting from the breach, but instead entered the final judgment which ordered specific performance.

17A Am.Jur.2d, Contracts, Sec. 737, states:

A renunciation or repudiation of a contract before the time for performance, which amounts to a refusal to perform it at any time, gives the adverse party the option to treat the entire contract as broken and to sue immediately for damages as for a total breach. In other words, if one party to a contract repudiates his duties thereunder prior to the time designated for performance and before he has received all of the consideration due him thereunder, such repudiation entitled the nonrepudiating party to claim damages for total breach....

In *Church of Christ Home for Aged v. Nashville Trust Co.*, 184 Tenn. 629, 202 S.W.2d 178 (1947), our Supreme Court said:

It is also a well recognized rule that a cause of action arises when the acts and conduct of one party evince an intention no longer to be bound by the contract. In *Brady v. Oliver*, 125 Tenn. 595, 147 S.W. 1135, 41 L.R.A.,N.S., 60, Ann.Cas. 1913C, 376, it was held: "Where one party to a contract announces in advance his intention not to perform it, the other party hereto may treat the contract as broken, and sue at once for the breach, without waiting for the time fixed for performance."

202 S.W.2d at 183.

■ When there is a total breach, plaintiff may recover for the value of that part

of the performance which was due at the time of trial and also recover for the value of that part of the performance which is to come due after the trial. *See* McCormick, *Damages* § 144 (1935).

With a dearth of Tennessee authority dealing with the issue before us we have looked to other jurisdictions for guidance.

In *Stopford v. Boonton Molding Co.*, 56 N.J. 169, 265 A.2d 657 (1970), plaintiff-employee sued defendant-employer for damages resulting from the anticipatory breach of a contract providing for a lifetime pension. Basically, the contract provided that defendant-company would pay the plaintiff-employee $296.76 monthly during his lifetime. Defendant-company terminated the pension plan and advised the plaintiff that he would receive no further retirement benefits. The court found that this amounted to a renunciation or a total anticipatory breach of the agreement. The court said:

> When that occurred, plaintiff had a choice of remedies. He could elect to sue for the accumulated unpaid benefits from October 1, 1966 to the date of trial and for a judgment of specific performance of the obligation to pay the benefits until his death. Or he could treat the breach as total and seek recovery of one lump sum representing the present value of the monetary benefits he could have received over his expectancy. (Citations omitted.)
>
> *Parker v. Russell*, [133 Mass. 74 (1882)] *supra*, decided by the Supreme Judicial Court of Massachusetts in 1882 is a leading case on the subject and has been cited with approval many times in the succeeding years. There, defendant for a valuable consideration agreed to support plaintiff for life. Defendant did so for over five years and then refused to perform any longer. Plaintiff sued for damages for breach of the whole contract. Such recovery was affirmed, the court saying:
>
> > "But if the breach has been such that the plaintiff has the right to treat the

contract as absolutely and finally broken by the defendant, and he elects so to treat it, the damages are assessed as of a total breach of the entire contract.

> > \*  \*  \*  \*  \*  \*
>
> > Such damages are not special or prospective damages, but are the damages naturally resulting from a total breach of the contract, and are suffered when the contract is broken, and are assessed as of that time. From the nature of the contract they include damages for not performing the contract in the future as well as in the past. The value of the contract to the plaintiff at the time it is broken may be somewhat indefinite because the duration of the life of the plaintiff is uncertain, but uncertainty in the duration of a life has not, since the adoption of life tables, been regarded as a reason why full relief in damages should not be afforded for failure to perform a contract which by its terms was to continue for life.
>
> > When defendant for example, absolutely refuses to perform such a contract after the time for entering upon the performance has begun, it would be a great hardship to compel the plaintiff to be ready at all times during his life to be supported by the defendant, if the defendant should at any time change his mind; and to hold that he must resort to successive actions from time to time to obtain his damages piecemeal, or else leave them to be recovered as an entirety by his personal representatives after his death." 133 Mass. at 75–76.

265 A.2d at 667.

*Pierce v. Tennessee Coal, Iron & R.R. Co.*, 173 U.S. 1, 19 S.Ct. 335, 43 L.Ed. 591 (1899), involved a contract effectively akin to the contract involved in the case at bar. The Court said:

> The legal effect of the contract sued on, as has been seen, was that the defendant

promised to pay the plaintiff certain wages, and to furnish him with certain supplies, so long, at least, as his disability to work should continue; and the consideration of these promises of the defendant was the plaintiff's agreement to do for the defendant such work as he was able to do, and his release of the defendant from all liability in damages for the personal injuries which had caused his disability.

\* \* \* \* \* \*

The defendant committed an absolute breach of the contract at a time when the plaintiff was entitled to require performance. The plaintiff was not bound to wait to see if the defendant would change its decision and take him back into its service, or to resort to successive actions for damages from time to time, or to leave the whole of his damages to be recovered by his personal representative after his death. But he had the right to elect to treat the contract as absolutely and finally broken by the defendant; to maintain this action, once for all, as for a total breach of the entire contract; and to recover all that he would have received in the future, as well as in the past, if the contract had been kept. In so doing, he would simply recover the value of the contract to him at the time of the breach, including all the damages, past or future, resulting from the total breach of the contract. The difficulty and uncertainty of estimating damages that the plaintiff may suffer in the future is no greater in this action of contract than they would have been if he had sued the defendant in an action of tort, to recover damages for the personal injuries sustained in its service, instead of settling and releasing those damages by the contract now sued on.

173 U.S. at 15–16, 19 S.Ct. at 340–41.

■ We find the two above cited authorities quite persuasive and are easily adaptable to the case at bar. Defendant made a decision to cease performing its obligations under the contract. Plaintiff elected to treat the contract as breached and sued for damages. Plaintiff did not seek, and should not be forced to accept, specific performance as his remedy.

Accordingly, the judgment of the trial court is vacated and the case is remanded to the trial court for an evidentiary hearing to determine the damages due plaintiff for the value of that part of defendant's performance past due and for the *present* value of that part of defendant's performance which is to come due after the trial. Costs of appeal are assessed against defendant.

TOMLIN, P.J., W.S., and FARMER, J., concur.